**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Rose-Eckert,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-14-00357-PHX-NVW<br><br>**ORDER** |

  Plaintiff Sally Rose-Eckert seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I. BACKGROUND**

  Plaintiff was born in February 1968. She has a 12th grade education that she received in Germany. She has worked as an assistant store manager, officer worker, and wholesale manager. She has neck and lower back impairments that cause pain and restrict some movements.

  In March 2011, Plaintiff applied for disability insurance benefits, alleging disability beginning December 31, 2008, subsequently amended to November 1, 2010.

On September 7, 2012, she appeared with her attorney and testified with the assistance of a German interpreter at a hearing before the ALJ. A vocational expert also testified. On September 24, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 24, 2014, Plaintiff sought review by this Court.

## II.     STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and that she has not engaged in substantial gainful activity since November 1, 2010, the amended alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease; insomnia; arthritis; esophagitis, status post thyroidectomy; and cervical spine degenerative disc disease. At step three, the ALJ

determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds; she is limited to occasionally climbing ramps and stairs, balancing, stooping, crouching, crawling, kneeling and crouching; she is limited to occasional reaching above the shoulder level bilaterally; she is restricted to frequent handling with the right upper extremity; and she is limited to concentrated use of moving machinery except for motor vehicles.

"Light work" may require "a good deal of walking or standing" and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ further found that Plaintiff is capable of performing past relevant work as an assistant manager and account clerk, both as generally performed and as actually performed by Plaintiff.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion

of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight

afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The Commissioner has final responsibility for determining whether a claimant meets the statutory definition of disability, and a statement by a medical source that the claimant is "disabled" or "unable to work" is not controlling. 20 C.F.R. §§ 404.1527(d), 416.927(d). The Commissioner considers opinion evidence along with other evidence regarding the nature and severity of a claimant's impairments and a claimant's residual functional capacity, but the Commissioner does not give any special significance to the source of an opinion on such issues. *Id.* All evidence from non-examining sources is considered to be opinion evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e).

### 2.     Treating Physician Angela Merzenich, M.D.

Dr. Merzenich is Plaintiff's primary care physician. Records show that Dr. Merzenich treated Plaintiff for an abscess on her finger, a rash, and esophageal reflux. She referred Plaintiff to specialists for neck pain, left wrist pain, and a thyroid lesion.

On September 29, 2010, Plaintiff first saw Dr. Merzenich for a well woman exam. Treatment notes indicate her medical history included chronic neck pain, arthritis, and heartburn and current medications included Ambien for insomnia and ibuprofen. On November 22, 2010, Plaintiff saw Dr. Merzenich for neck pain. Treatment notes indicate Plaintiff reported having an MRI in 2003 that showed a bulging disc at C5-C6 with possible impingement on nerve root on the right and she reported numbness and weakness in her right upper extremity. On November 30, 2010, Plaintiff was seen by a nurse practitioner for a left wrist injury. She was referred to an orthopedic specialist. On April 20, 2011, Dr. Merzenich noted that Plaintiff had three injections in her neck by a pain management specialist, and it had helped 50-60%. On June 21, 2011, Dr. Merzenich referred Plaintiff for physical therapy to relieve chronic neck/spine pain. On August 16, 2011, Dr. Merzenich noted that Plaintiff was being followed by a pain management specialist for her cervical disc disorder, was continuing physical therapy, and would

1  return to the pain management specialist because the physical therapy was not helping
2  much. On November 8, 2011, Dr. Merzenich noted that Plaintiff takes Ambien every
3  night, gets about 3-4 hours of sleep, then wakes up due to neck pain, and then falls back
4  asleep. On December 27, 2011, Dr. Merzenich noted that Plaintiff was experiencing
5  more pain and numbness in her left upper extremity and was dropping things at times.
6  She needed a referral to a neurologist/neurosurgeon because physical therapy and
7  injections were not providing true relief. On May 1, 2012, Dr. Merzenich noted that
8  Plaintiff's symptoms of cervical disc herniation were worsening, she was now dropping
9  things with her left upper extremity, it was getting weaker, and she needed an MRI of the
10 cervical spine. Plaintiff reported that the neurosurgeon wanted to do surgery, but she was
11 concerned about the technique he uses. On July 10, 2012, Dr. Merzenich noted Plaintiff
12 had seen a new neurologist and does not want to see another neurosurgeon because she
13 refuses surgery. Despite worsening symptoms, Plaintiff did not want to take any of the
14 medications Dr. Merzenich proposed because she was worried about side effects and felt
15 she already was taking too many medications. Dr. Merzenich also noted that Plaintiff
16 was experiencing more pain and numbness in her left upper extremity. Plaintiff also
17 reported that the new neurologist did an EMG of the right upper extremity, which was
18 abnormal.
19     Dr. Merzenich's records include January 3, 2012 correspondence from the
20 neurosurgeon, which stated that Plaintiff did "not seem to be in too acute distress," her
21 neck mobility was fairly good with "some pain on the right side" during lateral rotation,
22 and in testing musculature it was difficult to determine if there was "real weakness" on
23 the right side because she seemed to use less effort. Dr. Merzenich's records also include
24 an MRI of the cervical spine dated May 29, 2012. Its findings were: "Cervical vertebral
25 bodies appear normal in signal intensity and alignment." A July 12, 2012
26 electrodiagnostic examination of the right upper extremity disclosed: "Findings
27 consistent with a right cervical lesion affecting the C8 motor root/segment, axon loss in
28

1  type, mild in degree electrically and chronic in nature." It was an otherwise normal
2  study, finding no evidence of ulnar nerve entrapment.

3  On August 12, 2012, Dr. Merzenich completed a two-page check-box Medical
4  Assessment of Ability to Do Work-Related Physical Activities. She checked "no" in
5  response to the question "Can the patient perform work 8 hours a day, 5 days a week on a
6  regular and consistent basis?" She did not provide a response to the question "What are
7  the impairments and/or diagnosis affecting the patient's ability to function?" She
8  checked boxes indicating that in an 8-hour workday Plaintiff can sit less than 2 hours,
9  stand/walk less than 2 hours, lift less than 10 pounds, and carry less than 10 pounds. She
10 indicated that it is medically necessary for Plaintiff to alternate between sitting, standing,
11 or walking every 1-20 minutes with a 10-15 minute rest period with position changes.
12 Dr. Merzenich indicated that in an 8-hour workday Plaintiff can use her right hand 0% -
13 20% of the time and her left hand 21% - 33% of the time. She indicated that Plaintiff's
14 severe pain, fatigue, dizziness, and headaches causes her to be off task greater than 21%
15 of an 8-hour workday. She did not respond to the question "Would the patient miss time
16 from work due to his/her medical condition?" but checked "6+ days" to indicate the
17 number of days per month she would miss work and wrote "(Per pt – she has not worked
18 since she came to my practice)." For side effects caused by prescribed medications, Dr.
19 Merzenich wrote: "Moderate severity fatigue, insomnia, dizziness, confusion, [illegible]
20 concentration, memory [illegible]." She further indicated that she had provided treatment
21 to Plaintiff, considered and/or reviewed her treatment notes and/or records from other
22 providers, and the limitations result from objective, clinical, or diagnostic findings that
23 have been documented either by Dr. Merzenich or elsewhere in Plaintiff's medical
24 records. Dr. Merzenich did not write any comments in the "Comments" section of the
25 form.

26 The ALJ stated that he gave little weight to Dr. Merzenich's opinion "because it is
27 brief, conclusory, and inadequately supported by clinical findings." He rejected Dr.
28 Merznenich's conclusion that Plaintiff is unable to work at the level of substantial gainful

activity because that is an issue reserved to the Commissioner and because Dr. Merzenich did not provide an explanation. As noted above, Dr. Merzenich did not identify an impairment or diagnosis that affected Plaintiff's ability to function or provide any explanation for such severe limitations, including minimal use of her left hand and almost no use of her right. The ALJ further found the opinion was inconsistent with specific diagnostic examinations in the record, "which show that the claimant had no more than moderate findings of her neck or back,"[1] and Dr. Merzenich's own treatment records "which consistently reveal normal physical examinations."

The ALJ also stated that he gave little weight to Dr. Merzenich's opinion because the report was prepared by the doctor asking and recording Plaintiff's answers, thereby making it based on her subjective report. When the ALJ asked Plaintiff about Dr. Merzenich's assessment, Plaintiff testified that "this we did together, when I was there." The ALJ asked Plaintiff what she meant by that, and Plaintiff responded, "Well, she asked me --." The transcript does not indicate whether the ALJ interrupted Plaintiff or Plaintiff trailed off without finishing the sentence. On the assessment itself, Dr. Merzenich wrote a comment indicating that she received at least some information from Plaintiff. Although it is possible Dr. Merzenich did not merely record what Plaintiff told her to, Dr. Merzenich's treatment notes and medical records do not provide any other basis for her assessment of severe functional limitations.

### 3. Physical Consultative Examiner and State Agency Medical Consultants

The ALJ gave significant weight to the opinions of physical consultative examiner Monte Jones, M.D.,[2] and the State agency medical consultants on initial review (Mikhail

---

[1] The ALJ described the July 3, 2012 EMG study as "normal," but also stated that it "only suggested a mild degree of a right cervical lesion affecting the C8 root." The neurologist reported the results as "normal," except for "Findings consistent with a right cervical lesion affecting the C8 motor root/segment, axon loss in type, mild in degree electrically and chronic in nature."

[2] The ALJ incorrectly referred to the November 2, 2011, report of consultative

1  Bargan, M.D.) and on reconsideration (Michael Keer, D.O.) because they "are all
2  reasonable and supported by the record as a whole" and by diagnostic examinations.

3  On November 2, 2011, Dr. Jones examined Plaintiff, who reported she had neck and lower back pain and had no other problems. Physical examination showed Plaintiff had normal gait and posture. Plaintiff made positional changes between sitting and standing without difficulty and got up and down from the exam table without assistance. She was able to lie down and recover, squat and recover, and kneel and recover without assistance. Dr. Jones found that Plaintiff's range of motion was within acceptable limits for the cervical spine, thoracic spine, lumbar spine, pelvis, both shoulders, both elbows, and both wrists. Both upper extremities had normal pulse, pinprick sensation, and vibration sense. There was no muscle atrophy for either upper extremity. Plaintiff's hand function grip strength was 5/5 for both hands. Plaintiff was able to shrug her shoulders and turn her head right and left against resistance. Dr. Jones opined that Plaintiff is able to stand and/or walk 6-8 hours in an 8-hour day, but should never climb ladders/ropes/scaffolds and only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. Dr. Jones found no limitations in sitting, reaching, handling, fingering, and feeling. Dr. Jones assessed Plaintiff as capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently.

On June 22, 2011, Dr. Bargan reviewed Plaintiff's records and opined that Plaintiff is capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. He found some postural and manipulative limitations. Dr. Bargan cited specific facts from the evidence to support his conclusions. He noted that there was no opinion evidence from any source.

---

examiner Monte Jones, M.D., as Exhibit 12F, instead of 13F. Upon musculoskeletal and neurological examination of Plaintiff's cervical and lumbar spine, Dr. Jones found the range of motion was within acceptable limits. Plaintiff has not shown that the incorrect citation is harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

1    On November 14, 2011, Dr. Keer reviewed Plaintiff's records upon reconsideration, which included results of a mental status examination and Dr. Jones' assessment after physical examination.  Plaintiff alleged that in April 2011, about a month after she filed her initial disability claim, her condition changed for the worse, including increased lower back and neck pain, right arm weakness and numbness, difficulty lifting/carrying anything more than 5 pounds, depression, and difficulty with memory and concentration.  The mental status examiner found no mental limitations.  Dr. Keer affirmed Dr. Bargan's residual functional capacity assessment.

The ALJ articulated clear and convincing reasons for giving little weight to Dr. Merzenich's opinion, which was partially contradicted by Dr. Jones' opinion as well as Dr. Merzenich's own treatment notes.  Dr. Merzenich did not provide any explanation for her opinion, not even a bare diagnosis, and her opinion was inconsistent with clinical findings.

### B.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted).  But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Id.*  The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

1  discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002);
2  *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

3        First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

      On June 2, 2011, Plaintiff reported that she is in constant pain, gets very tired from pain medications, and cannot sit, stand, or walk for long periods of time. She said she has difficulty sleeping due to pain. She did not identify the location or perceived source of her pain. She reported that pain limits her activities, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, and using hands. She said she can walk 200 yards before she needs to stop and rest for two hours before resuming walking. She said she can pay attention for 30 minutes, finishes what she starts, does not follow written instructions well, and does not follow spoken instructions well. She reported that she takes Tramadol and that causes her dizziness and drowsiness. She also reported that she does not shop and her husband does all the shopping. Plaintiff said her hand strength is slowly reducing, but did not indicate which hand is affected. She did not report pain or numbness in either hand.

      On September 23, 2011, Plaintiff reported that she cannot lift more than 7.5 pounds, squat, bend at the waist, kneel, or climb more than one flight of stairs while holding something without pain. She said she cannot get to sleep because of strong neck pain. She did not report pain or numbness in either hand. She said she has no problem with dressing, bathing, hair care, and other personal care. She said she can walk 30 minutes, she has no problems paying attention or following written instructions, and she follows spoken instructions "very well." Plaintiff reported that she no longer can lift heavy objects or do intensive housework such as washing windows and vacuuming, but

her condition has not affected her ability to prepare meals daily. She is able to perform basic cleaning, laundry, dishes, and cooking. She spends about an hour daily cooking. She reported watching television once a day, but did not say for how long. She reported that she is able to pay bills, count change, handle a savings account, and use a checkbook. Plaintiff said she usually shops for groceries once a week with her husband assisting. Her husband's report, also dated September 23, 2011, is almost identical to Plaintiff's report except that Plaintiff's husband reported that Plaintiff is able to perform ironing for 45 minutes.

On November 1, 2011, Plaintiff reported to the psychological consultative examiner that memory problems and degenerated discs in her back made it difficult for her to work. She reported having memory problems for three years. She reported she experienced strong pain from sitting in the chairs where she last worked. She reported being able to shop independently, but said she usually takes her daughter or husband along to do any lifting. She reported being able to drive independently when she is not taking medication. She said she tries to go out of the house every day, even if only to walk around the block. She reported numbness and tingling sensation in her right hand.

On November 2, 2011, Plaintiff reported to the physical consultative examiner that she was unable to work because walking caused too much pain, she cannot sit for very long, and her pain medication prevents concentration. She complained of lower back pain and denied any other physical problems.

On September 7, 2012, Plaintiff testified that she stopped working in 2008 because her pain increased and she had to miss work a couple of times. She said she has pain in her neck and back, the pain travels to her right arm, the pain is constant, and she has numbness along her right arm down to her fingers. She testified that if she tries to reach overhead she experiences strong, sharp pain in her neck, and she has difficulty driving because she cannot turn her head to the right far enough. She testified that because of the numbness, her hand gets tired and she can only write for 15 minutes. She testified that she has problems getting dressed if she needs to lift her arm to put on a shirt and she has

neck pain when she washes her hair. She said that on good days she walks outside for 20 minutes and stops because she is tired. On bad days, which are three to four days a week, she cannot get out of bed because of the pain. She testified that she can stand for 20 minutes before her neck pain begins. The ALJ told Plaintiff he was confused by the records showing complaints regarding her left hand and asked her to clarify whether she was having problems with one or both hands. In response, Plaintiff explained that she has a bone growth in her left hand for which surgery was recommended, but she can handle that. She said what she cannot handle is the numbness in her right arm.

The ALJ found that Plaintiff's activities of daily living are inconsistent with her testimony regarding disability, they demonstrate the capacity for work, and they undermine the credibility of Plaintiff's allegations of functional limitations. The ALJ also found that Plaintiff's testimony regarding difficulty walking and moving around is inconsistent with the evidence of record. The ALJ further found that Plaintiff's allegations of severe neck pain are inconsistent with the objective medical evidence. The ALJ provided specific examples for each reason he found for finding Plaintiff's statements regarding severity of symptoms less than fully credible. Thus, substantial evidence supports finding that the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony.

**C.     The ALJ Did Not Err in Weighing a Third-Party Function Report.**

Plaintiff contends that the ALJ committed legal error by finding the third-party function report completed by Plaintiff's husband not credible to the extent it was inconsistent with the ALJ's residual functional capacity assessment. When an ALJ discounts the testimony of lay witnesses, he must give reasons that are germane to each witness. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693-94 (9th Cir. 2009).

The ALJ stated that the report said Plaintiff had trouble lifting, squatting, bending, reaching, walking, kneeling, climbing, and completing tasks, but it also said she performed personal care tasks, prepared meals, did laundry, shopped, and handled money. In fact, the report also states that Plaintiff does ironing for 45 minutes at a time.

The ALJ also stated the opinion of a husband is not an unbiased one because of familial motivation to support a spouse and a financial interest in increasing the household income through receipt of benefits. The ALJ stated the most important reason for finding the report less than fully credible was that it was not supported by the clinical or diagnostic medical evidence. These are reasons germane to the third-party function report by Plaintiff's husband.

### D. The ALJ Did Not Err by Presenting an Incomplete Hypothetical to the Vocational Expert.

Plaintiff contends that the ALJ's vocational hypothetical was incomplete because it did not include the limitations assessed by Dr. Merzenich, the limitations described by Plaintiff's husband, and Plaintiff's allegations. As previously found, the ALJ did not err either by giving little weight to Dr. Merzenich's opinion or by finding Plaintiff's and her husband's statements regarding the severity of her symptoms less than fully credible.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 10th day of April, 2015.

Neil V. Wake
United States District Judge